Parker G. Stinar, Esq. (pro hac vice forthcoming)
Patrick C. Lannen, Esq. (pro hac vice)
**STINAR LANNEN, PLLC**
280 W. Maple Rd., Ste. 200
Birmingham, Michigan 48009
Tel: (248) 565-2690
Fax: (248) 565-2691
Email: Parker@StinarLannenLaw.com
Patrick@StinarLannenLaw.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

IN RE: APPLE AIRTAG MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

This Document Relates To:

JANE S.N. DOE - 6,

Plaintiff,

v.

APPLE INC.,

Defendant.

MDL No. 3199
Case No. 5:26-md-03199-NW
Member Case No. __________
Hon. Noël Wise

**COMPLAINT FOR DAMAGES**

1. Negligence (California Law)
2. Strict Products Liability—Design Defect (California Law)
3. Products Liability—Failure to Warn (California Law)
4. UCL—Unlawful Prong (California Law)
5. UCL—Unfair Prong (California Law)
6. Strict Products Liability—Design Defect (Colorado Law) (in the alternative)
7. Strict Products Liability—Failure to Warn (Colorado Law) (in the alternative)
8. Negligence (Colorado Law) (in the alternative)

**DEMAND FOR JURY TRIAL**

Plaintiff, through counsel, brings this Complaint against Defendant Apple Inc. She files it directly in In re Apple AirTag Marketing, Sales Practices and Products Liability Litigation, MDL No. 3199, under the Court's direct-filing order. She alleges as follows, on personal knowledge as to herself and on information and belief as to all other matters.

## INTRODUCTION

1. Defendant Apple Inc. ("Apple") must be held accountable for its continuing failure to protect the public from being stalked with its product, the Apple AirTag® ("AirTag").

2. In 2021, Apple released the AirTag. It knew the device could—and would—be bought and used by abusive, controlling people to track, coerce, and endanger their victims.

3. Apple also knew in 2021 that adequate safeguards were not yet in place. It released the AirTag anyway. Since then, Apple has played catch-up. It has quietly added features that still fail to curb the dangers of a product that is now more than five years old.

4. Plaintiff is one of the people Apple's choices left exposed. In May 2022, after she filed for divorce, an Apple AirTag hidden in her truck tracked her in Colorado Springs, Colorado.

5. Plaintiff carried an iPhone—the very device Apple built its anti-stalking protections around. Those protections still failed her. She received an alert but could not locate the AirTag until she later learned how to make it play a sound.

6. Stalker taped the AirTag under the carpet of the back seat in Plaintiff's truck. He later went to retrieve it after Plaintiff traded in the truck, confirming how Apple's product helped him monitor her location.

7. Apple's design, warning, and release decisions were made at its headquarters in Cupertino, California. Those decisions give rise to liability under California law. Under California law, Apple's acts and omissions constitute negligence, strict products liability for design defect and failure to warn, and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.

**PARTIES**

8. Plaintiff is an adult individual. She is domiciled in, and a citizen of, the State of Colorado. She resides in Colorado Springs, Colorado. She intends to remain in Colorado indefinitely.

9. Defendant Apple Inc. is a corporation organized under the laws of the State of California. Its principal place of business is in Cupertino, California. Apple is therefore a citizen of California for purposes of 28 U.S.C. § 1332(c)(1). Apple is an American multinational technology company. Among its consumer electronics is the AirTag. Apple oversees all aspects of the AirTag, including its design, manufacture, marketing, technical support, and maintenance.

Apple also designs, operates, and maintains the Find My network through which AirTags function, and the iOS unwanted-tracking alerts on which persons like Plaintiff depend.

**JURISDICTION, VENUE, AND DIRECT FILING**

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity exists. Plaintiff is a citizen of Colorado. Apple is a citizen of California. No defendant shares Plaintiff's citizenship.

11. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks actual damages for severe mental anguish, emotional distress, fear for her physical safety, loss of her sense of autonomy and security in her home and vehicle, and related economic losses. She also seeks punitive damages under California law. Together, these damages exceed the jurisdictional threshold.

12. This Court has general and specific personal jurisdiction over Apple. Apple is incorporated in California and has its principal place of business in this District. Apple is at home here.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Apple resides in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here. On information and belief, Apple designed the AirTag, designed its anti-stalking safeguards, decided to release it, and decided how to warn the public from its Cupertino headquarters. Plaintiff chooses this District as the venue for this action for all purposes, including trial.

14. Plaintiff files this Complaint directly in this District and in MDL No. 3199, as permitted by Pretrial Order No. 1 (the "Direct Filing Order"). Under the Direct Filing Order, Plaintiff designates the Northern District of California as the proper venue for this action.

15. Venue in this District does not depend on the Direct Filing Order. Because Apple resides here and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here, Plaintiff could have filed this action in this District independent of MDL No. 3199. Plaintiff does not designate any other district as her home or transferor venue.

16. **Intradistrict Assignment.** Under Civil L.R. 3-2(c) and 3-5(b), this action relates to MDL No. 3199. It should be assigned to the Division and the Judge presiding over that proceeding.

## CHOICE OF LAW

17. California law governs Plaintiff's claims. Plaintiff pleads her California-law claims first, in Counts I through V. She pleads her Colorado-law claims in the alternative.

18. California law should govern Plaintiff's claims. This action was filed in this District, and California's choice-of-law rules therefore apply. The conduct Plaintiff challenges occurred in California. On information and belief, Apple's officers and managing agents in Cupertino made the decisions to release the AirTag with safeguards Apple knew were inadequate; to keep selling it after tens of thousands of stalking reports; to deliver safety fixes through owner-dependent firmware; and to describe stalking incidents to the public as "rare." California has a strong interest in regulating the conduct of a California corporation that designs dangerous products in California and sells them nationwide.

19. In the alternative, Colorado law should govern the Colorado-law counts to the extent the Court determines that Colorado has the greater interest in any issue. Plaintiff lived in Colorado when the tracking occurred and suffered injuries there.

20. Plaintiff does not concede that any conflict exists between Colorado and California law on any issue. If a true conflict exists, Plaintiff reserves the right to brief the choice of law at the appropriate stage.

## GENERAL ALLEGATIONS

21. On April 2, 2024, ITV News in the United Kingdom aired a report on AirTag stalking.[1] In response, Apple stated: "We have identified even more ways we can update AirTag safety warnings and help guard against further unwanted tracking."

[1] ITV News, *AirTags Becoming "Weapon of Choice of Stalkers" as GPS Tracker Cases Rocket by 317%*, YouTube (Apr. 2, 2024), https://www.youtube.com/watch?v=TBhYdgt1FhE.

22. This promise of future, unspecified action came too late for Plaintiff. The time for adequate safety warnings and better protections was April 2021, before the AirTag's release. It is unconscionable for Apple to keep on the market a product it knows is still unsafe.

23. Apple has always known that any safeguards it built into AirTags would only, in Apple's own words, "deter as opposed to prevent malicious use."

24. Each year, an estimated 13.5 million people are stalked in the United States. Nearly one in three women and one in six men experience stalking at some point in their lives.[2]

25. Apple's AirTags have become a critical—and shameful—part of this problem. From 2021 forward, Apple has received over 40,000 stalking reports, at times averaging 1,000 complaints per month.

26. Stalking takes many forms. Most often it involves unwanted, repeated behavior that would cause fear in a reasonable person. Whatever the method, the common thread is the fear it creates in the victim.

27. That fear erodes a victim's autonomy and disrupts daily life. One in eight employed stalking victims misses work because of the victimization. More than half of those lose more than five days of work. One in seven stalking victims moves as a result.[3]

28. Stalking victims suffer much higher rates of depression, anxiety, insomnia, and social dysfunction than the general population. Most report a fear of not knowing what will happen next. Stalking is a significant risk factor for homicide in abusive relationships.

29. No one disputes any of this. Stalking is a serious, well-documented phenomenon. It ruins lives, and it ends them.

30. Knowing all this, Apple released a small, concealable device. It allows anyone with an iPhone to continuously and precisely track another person's location for $29.00.

---

[2] Stalking Prevention, Awareness, and Resource Ctr. (SPARC), *Stalking Fact Sheet* 1 (2019), https://www.stalkingawareness.org/wp-content/uploads/2019/01/SPARC_StalkngFactSheet_2018_FINAL.pdf.

[3] Katrina Baum et al., U.S. Dep't of Just., Bureau of Just. Stat., *Stalking Victimization in the United States* 1 (Jan. 2009), https://www.justice.gov/archive/ovw/docs/bjs-stalking-rpt.pdf.

31. Before releasing the AirTag in April 2021, Apple knew it would be used as a stalking tool. Apple even designed certain features to reduce that risk. But Apple released the product knowing those features could not prevent stalking.

32. At release, Apple knew the AirTag's anti-stalking measures were inadequate for at least these reasons:

a. The iPhone notification system alerted users to an unknown AirTag only after three days—an eternity in a stalking situation;

b. Android users received no notifications at all, leaving roughly half of the smartphone-using population unprotected;

c. The AirTag's speaker, meant to alert a victim to an unknown AirTag, was quiet, easily muffled, and easily defeated, and instructions for disabling it were widely available online; and

d. The AirTag's small, light, and concealable form made it trivially easy to hide in a victim's belongings or vehicle.

33. Apple made a calculated business decision to release the AirTag anyway. It put market timing and profits ahead of human safety.

34. The consequences were swift and predictable. Soon after the April 2021 release, reports poured in from people who had been stalked, tracked, and terrorized with AirTags.

35. Stalkers have used AirTags to track victims to their homes, workplaces, and places of refuge. AirTags have been hidden in wheel wells, under bumpers, in purses, in jacket pockets, and in children's backpacks.

36. AirTags have enabled abusers in domestic situations to monitor and control the people closest to them. Many victims had no idea they were being tracked until it was too late.

37. The consequences have been as severe as possible. Multiple murders have occurred in which the killer used an AirTag to track the victim.

38. With its "stalker-proof" protections exposed as inadequate, Apple has spent five years scrambling. Most of these failures persist. Apple keeps reacting to harm its product has

caused instead of preventing it. As one commentator put it: “You wouldn’t allow a car to come to mass-market without having vigorous testing, so why are we allowing smart tech to just be released and then fixing safety features later?”[4]

## FACTUAL ALLEGATIONS

### A. How the AirTag Works

39. Apple introduced the AirTag in April 2021 as a standalone product.[5] It is about the size of a U.S. quarter. It is a tracking beacon marketed to help consumers find objects such as keys or purses.

40. The AirTag uses Bluetooth Low Energy (“BLE”) technology. It broadcasts a rotating identifier. Nearby Apple devices detect that signal and relay the AirTag’s location to Apple’s servers through the “Find My” network.

41. The Find My network turns the world’s Apple devices into a mesh tracking network. Any powered-on, connected iPhone, iPad, or Mac can relay an AirTag’s location. There are over two billion active Apple devices. The network works silently, without the knowledge or consent of the device owners who relay the data.

42. As a result, an AirTag’s location can be updated virtually anywhere—including on the streets, parking lots, and driveways of Colorado Springs, Colorado.

### B. Apple Knew the AirTag Would Be Used to Stalk

43. Before the AirTag’s release, commentators, journalists, and domestic violence advocates publicly warned that small, cheap Bluetooth trackers would be used as stalking tools.

44. Apple was well aware of these concerns. Apple anticipated that the AirTag would be used for unwanted tracking.

---

[4] Ellie Fry, *Inside Chilling Rise of AirTag Stalking as Apple Device Is Branded 'Gift to Abusers'*, The Mirror (Apr. 24, 2023), https://www.mirror.co.uk/tech/inside-chilling-rise-airtag-stalking-29746435.

[5] Press Release, Apple Inc., *Apple Introduces AirTag* (Apr. 20, 2021), https://www.apple.com/newsroom/2021/04/apple-introduces-airtag/.

45. Apple described the AirTag's anti-stalking features as designed to "deter as opposed to prevent" malicious use. That was an admission that Apple knowingly released the product with inadequate safeguards.

46. Apple launched the AirTag with only minimal safeguards. These were (a) an audible alert that sounded after three days away from the owner's iPhone, and (b) a notification that alerted iPhone users—but not Android users—to an unknown AirTag traveling with them.

47. These measures were woefully inadequate. Three days without an alert gives a stalker ample time to learn a victim's home, workplace, and routine.

48. About half of U.S. smartphone users use Android devices. At launch, they had no way to detect an AirTag tracking them. Apple released a "Tracker Detect" app for Android in December 2021, eight months after launch. The app required users to start a scan manually.

49. In February 2022, Apple announced it would cut the time before an unknown AirTag sounds from three days to a random interval between 8 and 24 hours. Even that interval gives a stalker ample time to locate a victim's home, workplace, and routine.

50. Apple's piecemeal approach—half-measures adopted only after public outcry—shows that Apple has consistently put sales ahead of safety.

**C. The AirTag's Safeguards Fail Even iPhone Users**

51. Apple's protections fail even the iPhone users they were built for. Plaintiff is one of them.

52. The iOS "Item Safety Alerts" feature relies on algorithms that often fail to detect tracking in time. An unknown AirTag must travel with the victim for some period before any alert issues. During that window, the stalker can watch the victim's every move.

53. The alerts are easy to miss. They look like ordinary push notifications. They can be buried, swiped away, or simply overlooked. Users who turn off Location Services for privacy reasons also lose these alerts. Apple does not explain this.

54. An alert, standing alone, does not tell the victim where the AirTag is. To find it, the victim must rely on the AirTag's sound. That sound is deficient in at least four ways:

a. It is too quiet. The alert reaches about 60 decibels at most. A purse, fabric, or a car's exterior can muffle it;

b. It is not distinct. The chime sounds like countless other device alerts;

c. It is not continuous. It stops before the person can find the device; and

d. It is easily disabled. The AirTag keeps working after the speaker is removed, and online tutorials explain how.

55. Even when a victim finds an AirTag, her options are limited. She must take physical possession of it and remove its battery. Finding it may be impossible or costly. Dismantling it can compromise evidence. And the stalker can simply deploy another AirTag.

56. Safety updates to AirTag firmware are not pushed automatically to the victim. They depend on the AirTag's owner—the stalker—to install them.

**D. Feasible Safer Alternative Designs Existed**

57. At all relevant times, safer alternative designs existed. Each would have prevented or significantly reduced the risk of AirTag stalking without substantially impairing the product's utility for finding lost items. Each was economically and technologically feasible when the AirTag left Apple's control, using existing or reasonably achievable scientific knowledge. Among other things, Apple could have:

a. alerted a tracked person within minutes, not hours or days;

b. designed a louder, distinct, continuous, non-removable, and tamper-resistant speaker, and rendered the AirTag non-functional if the speaker were disabled;

c. enabled precise, on-demand location of an unknown AirTag by the person it is traveling with, so the victim could find a concealed device without police help;

d. required identity verification or account linking before activation, creating accountability and deterring anonymous stalking;

e. automatically disabled tracking when an AirTag stays near a non-owner's device for a defined period;

f. required periodic owner re-authentication to prevent indefinite passive tracking;

g. released simultaneous, equivalent, automatic detection for Android users at launch; and

h. made the AirTag larger and more conspicuous, so it could not be easily hidden under a vehicle's bumper, carpet, seats, or trim.

58. Apple chose not to adopt any of these designs.

**E. Apple Consciously Disregarded the Danger**

59. Only weeks after the AirTag's release, Apple CEO Tim Cook was briefed on press reports describing the AirTag as "a new means of inexpensive, effective stalking." Cook was told that Apple could weather the storm: "At this time, we are not seeing this narrative gain steam in media or on social…." Apple chose to manage the narrative instead of the danger.

60. Apple's officers, directors, and managing agents, including Mr. Cook, authorized, directed, or ratified the decision to release and keep selling the AirTag without adequate safeguards. They did so with knowledge of the ongoing harm.

61. Apple publicly called AirTag stalking "rare." Its internal data showed more than 40,000 unwanted-tracking reports in the three years after release, ending in April 2024. Apple also knew that most law-enforcement requests it received about AirTags concerned stalking.

62. Apple has also failed to support victims. Its legal-process guidelines state that AirTag pairing history is available for only up to 25 days. Victims who seek protection or prosecution are often left without the evidence they need.

63. The AirTag sells for about $29. Apple has sold tens of millions. Before the AirTag, effective GPS trackers were expensive, needed monthly subscriptions, and were hard to hide. The AirTag removed those barriers.

64. The harm is ongoing. Apple continues to sell AirTags with safeguards that remain inadequate.

**<u>PLAINTIFF'S EXPERIENCE WITH AIRTAGS</u>**

65. At the time of the events described below, Plaintiff lived in Colorado Springs, Colorado. The tracking described below occurred in and around Colorado Springs, Colorado.

66. Plaintiff had previously been married to a man who is referred to here as the "Stalker."

67. Plaintiff used an iPhone. Apple designed its unwanted-tracking alerts to protect iPhone users like Plaintiff.

68. On or about May 20, 2022, after Plaintiff filed for divorce, she received an Apple notification that an unknown device was traveling with her. Plaintiff did not know how long the device had been there.

69. The alert did not help Plaintiff locate the AirTag. Plaintiff was unable to find it until she later learned that she could make the device play a sound.

70. Plaintiff pinged the AirTag and found it taped under the carpet of the back seat in her truck.

71. Plaintiff did not tell Stalker that she had found the AirTag. She traded in the truck with the AirTag still inside it.

72. The next day, Stalker went to the dealership to remove the AirTag. That conduct showed that he knew where the device was because Apple's product continued to reveal its location.

73. Plaintiff reported the AirTag stalking to law enforcement in Colorado Springs in July 2022. Stalker was jailed for a few days, and a restraining order was entered. Plaintiff later reported that Stalker violated the restraining order.

74. Plaintiff also reported the stalking to a therapist, an attorney, her employer, and friends or family.

75. Plaintiff suffered serious emotional and mental harm. She received treatment in Colorado Springs for anxiety, depression, and post-traumatic stress disorder.

76. The tracking also caused economic and property-related harm. Plaintiff traded in her truck while the AirTag remained concealed inside it, and she reported relocation, lost-wage, property-damage, and security-related documentation.

77. As a direct and proximate result of Apple's defective AirTag design and inadequate warnings, Plaintiff suffered fear, severe emotional distress, loss of security, treatment-related harm, and economic losses.

78. Plaintiff would have discovered the AirTag sooner, or Stalker would have been deterred from using it, if Apple had adopted the safer alternative designs and warnings described above.

79. Specifically, had the AirTag issued an alert within minutes of traveling with Plaintiff, emitted a louder and continuous sound, or let Plaintiff precisely locate it from her iPhone when she received the May 20, 2022 alert, she would have found the AirTag under the back-seat carpet promptly. Instead, she could not find it until she later learned on her own how to make it play a sound. During that period, and afterward, the AirTag continued to report her location to Stalker.

80. Plaintiff's emotional distress was accompanied by physical manifestations. Plaintiff was also placed in fear for her physical safety by Stalker's continued tracking of her location in the vehicle she drove every day.

## STATUTE OF LIMITATIONS AND TOLLING

81. Plaintiff's claims accrued no earlier than May 20, 2022, when she first received the unknown-device alert and learned she was being tracked. Her California two-year claims, her UCL claims, her Colorado product-liability claims, her Colorado consumer-protection claim, and her Colorado warranty claim are timely as tolled by the *Hughes* Action and, in the alternative, by equitable-tolling and discovery principles. The *Hughes* Action was filed on December 5, 2022, while Plaintiff was an asserted member of the putative nationwide class, and class certification was denied on March 9, 2026. Plaintiff files this action within the tolled limitations period.

82. In the alternative, equitable tolling applies. Plaintiff reasonably relied on the pending *Hughes* Action to protect her claims. Apple had timely notice of her claims through that action and suffers no prejudice. Plaintiff acted diligently once class certification was denied.

**COUNT I**

**NEGLIGENCE**

**(California Law)**

83. Plaintiff repeats and realleges all preceding paragraphs.

84. Under California negligence principles, Apple owed Plaintiff a duty of reasonable care in the design, testing, marketing, distribution, and post-sale support of the AirTag.

85. Each relevant consideration supports that duty. Harm to people like Plaintiff was highly foreseeable. The certainty that such people would be injured was great. The connection between Apple's conduct and Plaintiff's injuries was close. Moral blame attaches to Apple's knowing release of an inadequately safeguarded product. And public policy favors preventing the harm.

86. As the manufacturer that designed the AirTag and placed it into the stream of commerce, Apple had a duty to avoid exposing foreseeable users and bystanders—including persons foreseeably tracked by the device—to unreasonable risks of harm. That duty included designing the AirTag so it would not create an unreasonable risk of use as an instrument of criminal stalking. Apple specifically anticipated and acknowledged that risk before launch.

87. Apple's duty does not depend on any duty to control the Stalker. It arises from Apple's own affirmative conduct: designing, releasing, and continuing to sell a product, and building and operating the Find My network and the iOS alerts, in ways that created the risk of covert tracking that injured Plaintiff.

88. Apple breached its duty. Among other things, Apple released the AirTag knowing its safeguards would only "deter as opposed to prevent" stalking; designed alerts that issue only after a tracking device has traveled with the victim for hours or days; designed alerts that do not help the victim locate the device; designed a speaker too quiet, too brief, and too easily muffled to lead a victim to a concealed device; failed to adopt the feasible safer alternative designs alleged above; failed to adequately test the AirTag's anti-stalking features in real-world concealment scenarios, such as placement under a vehicle's interior carpet; and continued to sell the AirTag

after learning of tens of thousands of stalking reports, while publicly minimizing the problem. It rushed AirTags to market and kept selling them without timely, reliable detection of unwanted tracking for people like Plaintiff. It also gave tracked persons no reliable way to locate a hidden AirTag.

89. Apple's breach was a substantial factor in causing Plaintiff's injuries. The Stalker's criminal use of the AirTag was not an unforeseeable superseding cause. It was the very harm that Apple anticipated, was warned about, and designed its safeguards—inadequately—to prevent. The AirTag's inadequate safeguards substantially enhanced the Stalker's ability to track Plaintiff covertly.

90. As a direct and proximate result of Apple's negligence, Plaintiff suffered the injuries described above and is entitled to compensatory damages.

91. Apple acted with malice, oppression, or fraud within the meaning of Cal. Civ. Code § 3294. Its officers, directors, and managing agents knew of the probable dangerous consequences of the AirTag's design and consciously chose not to avoid them. Plaintiff is entitled to punitive damages under California law.

**COUNT II**

**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

**(California Law)**

92. Plaintiff repeats and realleges all preceding paragraphs.

93. Apple designs, manufactures, distributes, and sells AirTags. Apple placed the AirTag used to track Plaintiff into the stream of commerce.

94. The AirTag is defective in design under the risk-benefit test. Its foreseeable risk of facilitating stalking outweighs the benefits of its design. Practical, technically feasible alternative designs existed that would have prevented or significantly reduced Plaintiff's injuries. They include immediate, reliable, and tamper-resistant alerts; a louder, continuous, non-removable speaker; precise on-demand location by the tracked person; and design features that reduce covert

placement and continued tracking. Apple bears the burden of proving that the benefits of the challenged design outweigh its inherent risks.

95. In the alternative, the AirTag is defective in design under the consumer-expectations test. It failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable way. An ordinary iPhone user would expect that when her iPhone warns her that an unknown AirTag is traveling with her, the warning would come promptly and would help her find the device. The AirTag failed those expectations. Plaintiff received an alert but could not find the AirTag hidden in her truck.

96. The design defect was a substantial factor in causing Plaintiff's injuries, as alleged in the paragraphs on Plaintiff's experience above. The Stalker's criminal use of the AirTag was not an unforeseeable superseding cause. It was the very harm the AirTag's anti-stalking safeguards were designed—and failed—to prevent. Apple's admission that its safeguards would only "deter as opposed to prevent" malicious use confirms that Apple anticipated and accepted the risk of exactly this conduct.

97. As a direct and proximate result of the AirTag's defective design, Plaintiff suffered the injuries described above and is entitled to compensatory damages. Apple's conscious disregard of the known safety risks constitutes malice, oppression, or fraud under Cal. Civ. Code § 3294. Plaintiff is entitled to punitive damages under California law.

**COUNT III**

**PRODUCTS LIABILITY: FAILURE TO WARN**

**(California Law)**

98. Plaintiff repeats and realleges all preceding paragraphs.

99. Apple designed, manufactured, distributed, and sold the AirTag used to track Plaintiff.

100. When the AirTag left Apple's possession, it posed known or knowable risks. Those risks included covert tracking of non-consenting persons and the failure of Apple's alerts to notify iPhone users like Plaintiff in time or to help them locate the device. Apple knew of these risks, or

could have known of them in light of the information available to it at the time of manufacture and distribution. That information included its own pre-launch assessment that its safeguards would only "deter as opposed to prevent" malicious use.

101. These risks presented a substantial danger when the AirTag was used in an intended or reasonably foreseeable way. Ordinary consumers, and people like Plaintiff who could be tracked by an AirTag, would not have recognized them.

102. Apple failed to adequately warn of these risks or to instruct the public on how to detect and guard against unwanted tracking. Among other things, Apple failed to provide timely alerts to people being tracked; failed to provide alerts that are persistent, distinct, and accompanied by a sound loud and continuous enough to locate a concealed device; failed to instruct tracked persons how to locate an AirTag hidden on or under a vehicle; failed to disclose that disabling Location Services would also disable unknown-AirTag alerts; and failed to accurately disclose the scope of AirTag stalking, which Apple publicly called "rare." Apple also failed to act as a reasonable manufacturer would have acted, after sale, once it learned of tens of thousands of stalking reports.

103. Apple's failure to warn was a substantial factor in causing Plaintiff's injuries. Had Apple's alert told Plaintiff that she could make the AirTag play a sound, and how to search a vehicle's interior for it, she would have followed those instructions when she received the alert on May 20, 2022. She would have located and disabled the AirTag promptly, rather than only after she later learned on her own that she could make it play a sound.

104. As a direct and proximate result of Apple's failure to warn, Plaintiff suffered the injuries described above and is entitled to compensatory damages. Apple's conscious disregard of the known risk also entitles Plaintiff to punitive damages under Cal. Civ. Code § 3294.

**COUNT IV**

**VIOLATION OF THE UNFAIR COMPETITION LAW: UNLAWFUL PRONG**

**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**

105. Plaintiff repeats and realleges all preceding paragraphs.

106. The Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice. Cal. Bus. & Prof. Code § 17200.

107. Apple engaged in business acts and practices in California. On information and belief, Apple designed the AirTag and its safeguards, decided to release and keep selling it, and decided how to warn the public at its Cupertino headquarters.

108. Apple's conduct is unlawful. As alleged above, it constitutes negligence and products liability under California law. Each of those independent violations serves as a predicate for the UCL's unlawful prong.

109. Apple's conduct also violates the policy and purpose of the California Invasion of Privacy Act, Cal. Penal Code §§ 630 et seq. Apple designed, released, and kept selling the AirTag without adequate safeguards against unconsented location tracking. It failed to give Plaintiff, an iPhone user, a timely and reliable way to detect and locate the AirTag tracking her. In doing so, Apple aided, and was a substantial factor in enabling, the electronic tracking of Plaintiff's location and movements by a third party without her consent.

110. Plaintiff has standing under Cal. Bus. & Prof. Code § 17204. She suffered injury in fact and lost money or property as a result of Apple's conduct. Among other things, she lost value when she traded in her truck because of the hidden AirTag, and she incurred out-of-pocket costs for security, relocation, and treatment.

111. Plaintiff lacks an adequate remedy at law for the prospective harm the injunction would address. Damages compensate past injury but do not stop Apple from continuing to sell AirTags with inadequate safeguards. Plaintiff faces a real and immediate threat of future tracking: Stalker has already violated the restraining order entered against him, and Apple's safeguards would fail her again.

**COUNT V**

**VIOLATION OF THE UNFAIR COMPETITION LAW: UNFAIR PRONG**

**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**

112. Plaintiff repeats and realleges all preceding paragraphs.

113. Apple's business practices are unfair. Releasing and continuing to sell AirTags with safeguards Apple knew were inadequate is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. The gravity of the harm far outweighs any utility of Apple's conduct.

114. Apple's business practices are also unfair because they undermine public policy tethered to specific constitutional and statutory provisions. Those provisions include the California Invasion of Privacy Act, Cal. Penal Code §§ 630 et seq., and the right to privacy in the California Constitution, Cal. Const. art. I, § 1.

115. Apple's business practices are further unfair because (1) the injury to consumers is substantial; (2) the injury is not outweighed by any countervailing benefit to consumers or competition; and (3) consumers could not reasonably have avoided it. Plaintiff could not avoid a device hidden on her vehicle that her phone did not timely disclose or help her locate.

116. Reasonably available alternatives existed to further Apple's legitimate business interests. Apple's practices are a continuing course of unfair competition because Apple continues to sell AirTags.

117. Plaintiff has standing under Cal. Bus. & Prof. Code § 17204. She suffered injury in fact and lost money or property as a result of Apple's conduct, as alleged above.

**CAUSES OF ACTION UNDER COLORADO LAW**

**(PLEADED IN THE ALTERNATIVE)**

118. Plaintiff pleads Counts VI through X in the alternative under Federal Rule of Civil Procedure 8(d)(2) and (3), to the extent the Court determines that Colorado law governs any issue.

**COUNT VI**

**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

**(Colorado Law; Pleaded in the Alternative)**

119. Plaintiff repeats and realleges all preceding paragraphs.

120. Colorado recognizes strict products liability for products that are defective and unreasonably dangerous, including products with design defects.

121. Colorado uses risk-benefit principles for design-defect claims and considers, among other factors, product utility, the likelihood and seriousness of injury, feasible safer alternatives, and the manufacturer's ability to eliminate the danger without impairing utility.

122. Apple is a manufacturer and seller under Colorado law, and it placed the AirTag used to track Plaintiff into the stream of commerce. The AirTag was defectively designed and unreasonably dangerous when it left Apple's control. Its foreseeable use included covert tracking of non-consenting persons, including Plaintiff. Stalker's use was not a misuse that bars recovery under Colorado law, because Apple anticipated precisely that use and designed safeguards, inadequately, to address it.

123. Each risk-benefit factor supports liability. The AirTag's utility for finding lost items does not depend on a slow alert, a weak speaker, or the inability of a tracked person to locate it. The likelihood and seriousness of injury from covert stalking are high. Feasible safer alternatives existed, as alleged above, and Apple could have eliminated the danger without impairing the product's usefulness. Those alternatives were within the state of the art when the AirTag left Apple's control. The design defect proximately caused Plaintiff's injuries, as alleged in the paragraphs on Plaintiff's experience above.

**COUNT VII**

**STRICT PRODUCTS LIABILITY: FAILURE TO WARN**

**(Colorado Law; Pleaded in the Alternative)**

124. Plaintiff repeats and realleges all preceding paragraphs.

125. Colorado law recognizes that failure to warn adequately can render a product defective and unreasonably dangerous.

126. Apple knew or should have known that AirTags posed a grave risk of covert stalking. Apple failed to provide adequate, timely, and effective warnings and instructions to tracked persons. Among other things, its alert did not tell Plaintiff that she could make the AirTag play a sound, did not tell her how to search a vehicle for it, and did not disclose how long it had been traveling with her.

127. Had Apple provided adequate warnings and instructions, Plaintiff would have followed them, located the AirTag promptly after the May 20, 2022 alert, and reduced or avoided her injuries. The failure to warn proximately caused Plaintiff's injuries.

**COUNT VIII**

**NEGLIGENCE**

**(Colorado Law; Pleaded in the Alternative)**

128. Plaintiff repeats and realleges all preceding paragraphs.

129. A manufacturer must exercise reasonable care in designing, testing, marketing, supporting, and warning about its products, including by warning of dangers that are reasonably foreseeable.

130. Apple owed a duty to exercise reasonable care in designing, testing, marketing, supporting, and warning about the AirTag. Apple breached that duty by, among other things, releasing the AirTag with alerts it knew would come late and would not help victims locate the device; failing to adopt the feasible safer designs alleged above; failing to warn tracked persons how to find a hidden AirTag; and continuing to sell the AirTag after learning of tens of thousands of stalking reports.

131. Apple's negligence proximately caused Plaintiff's injuries. Plaintiff's emotional distress was accompanied by physical manifestations, and Stalker's continued tracking placed her in fear for her physical safety, as alleged above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment against Apple and award the following relief:

a. Judgment in Plaintiff's favor on the causes of action in this Complaint, including, in the alternative, the Colorado-law causes of action;

b. Actual damages, including for past and future mental anguish and emotional distress, and the cost of any related treatment, in an amount to be proven at trial and exceeding $75,000;

c. Punitive damages under Cal. Civ. Code § 3294, in an amount to be proved at trial. To the extent Colorado law governs, Plaintiff reserves the right to seek exemplary damages as Colo. Rev. Stat. § 13-21-102(1.5)(a) permits;

d. An injunction under Cal. Bus. & Prof. Code § 17203 barring Apple from continuing the unlawful and unfair practices alleged in this Complaint;

e. Reasonable attorney's fees under Cal. Civ. Proc. Code § 1021.5 and any other applicable law;

f. Pre-judgment and post-judgment interest as permitted by law;

g. Costs of suit; and

h. Such other relief as the Court deems just and proper.

Dated: November 3, 2026

Respectfully submitted,
**STINAR LANNEN, PLLC**

By: /s/ ______________________
Parker G. Stinar, Esq. (pro hac vice forthcoming)
Patrick C. Lannen, Esq. (pro hac vice)

Counsel for Plaintiff

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b) and Civil L.R. 3-6, Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 3, 2026

Respectfully submitted,
**STINAR LANNEN, PLLC**

By: /s/ ______________________
Parker G. Stinar, Esq. (pro hac vice forthcoming)
Patrick C. Lannen, Esq. (pro hac vice)

Counsel for Plaintiff